**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Midland National Life Insurance Company,<br><br>            Plaintiff,<br><br>vs.<br><br>Gus Niewenhous, et al.,<br><br>           Defendants. | No. CV-19-02214-PHX-SPL<br><br>**ORDER** |

Before the Court are: (1) Plaintiff Midland National Life Insurance Company ("Midland National") and Defendants Gus Niewenhous ("Niewenhous") and Kelly Cullum's ("Cullum") Joint Motion for Default Judgment Against Laura Ann Fairbanks as Personal Representative of the Estate of Jason Charles Fairbanks, Deceased (the "Joint Motion for Default Judgment") (Doc. 52); and (2) Midland National's Agreed Motion for Final Judgment in Interpleader (the "Motion for Final Judgment") (Doc. 54). For the reasons that follow, the Joint Motion for Default will be granted. For purposes of clarity, the Court will rule on the Motion for Final Judgment in a separate order filed concurrently.[1]

**I.    Background**

On April 4, 2019, Midland National filed its Complaint in Interpleader (Doc. 1) and filed its Amended Complaint in Interpleader (Doc. 35) on November 5, 2019 with leave of

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. See L.R. Civ. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

the Court. Midland National brought this action pursuant to the federal interpleader statute, 28 U.S.C. § 1335, 28 U.S.C. §§ 1397, and 2361, as well as Federal Rule of Civil Procedure 22 to resolve potential competing claims for payment of the death benefit under a life insurance policy, Policy Number ******1655 (the "Policy"). (Doc. 35 at 8–9, ¶¶ 31–32) Midland National issued the Policy on the life of Ann M. Niewenhous (aka Ann M. Fairbanks) (the "Insured") with a Specified Amount of $1,000,000.00. (Doc. 35 at 4, ¶ 9) Jason Charles Fairbanks was the primary beneficiary and the co-equal contingent beneficiaries, with each a 50 percent share of the Policy proceeds, were the Insured's siblings, Niewenhous and Cullum. (Doc. 35 at 4, ¶¶ 10–11)

The Insured and Jason Charles Fairbanks both died of gunshot wounds on November 10, 2017. (Doc. 35 at 4, ¶ 12) On or about November 13, 2017, Midland National was informed that Jason Charles Fairbanks was a suspect in the death of the Insured. (Doc. 35 at 4, ¶ 14) The Scottsdale Police Department investigated the deaths and sent a copy of its Incident/Investigation Report to Midland National, in which a police detective stated his opinion that Jason Charles Fairbanks committed suicide after shooting and killing the Insured. (Doc. 35 at 8, ¶ 29) There has been no conviction against Jason Charles Fairbanks or court determination that he was criminally accountable for the felonious and intentional killing of the Insured under Arizona Revised Statutes ("A.R.S.") § 14-2803 (Arizona's slayer statute). Midland National alleges that it cannot determine, factually or legally, who is entitled to the Policy Proceeds, given the language of several of the Policy's provisions, Sections 3.10 Beneficiary and 3.10.2 Beneficiary Death in Common Event, A.R.S. § 14-2702 regarding a person's survival of an event, and A.R.S. § 14-2803 Arizona's slayer statute. (Doc. 35 at 8–9, ¶¶ 31–32)

On August 19, 2019, Niewenhous and Cullum filed their Answer and Counterclaim Against Midland National. (Doc. 18) Midland National filed its Answer and Affirmative Defenses to the Counterclaim on September 9, 2019. (Doc. 22) Counsel for Niewenhous and Cullum has asserted that they are entitled to share equally in the entire amount of the Policy proceeds based on Arizona's slayer statute, A.R.S. § 14-2803. (Doc. 35 at 7–8, ¶

26) On November 15, 2019, Midland National filed proof of service of the Summons and Amended Complaint on Laura Ann Fairbanks as Personal Representative of the Estate of Jason Charles Fairbanks (the "Personal Representative"), Deceased, showing service was completed on November 14, 2019. (Doc. 43) Following the Personal Representative's failure to timely answer the Amended Complaint, Midland National applied for entry of default against the Personal Representative and the Clerk of the Court entered default accordingly on December 17, 2019. (Doc. 45) As of the date of this Order, the Personal Representative has not appeared in this case nor filed any document with the Court. On April 16, 2020, the Court granted Midland National's Motion to Deposit its admitted liability in this matter (Doc. 49) and on May 11, 2020, Midland National deposited $999,638.00 with the Clerk of the Court (the "Policy Proceeds"). (Receipt #PHX219102)

## II. Standard of Review

Once a party's default has been entered, the District Court has discretion to grant default judgment. *See Minnesota Life Ins. Co. v. Gomez*, 2015 WL 4638351, at *3 (D. Ariz. Aug. 4, 2015) (citing Fed. R. Civ. P. 55(b)(2)). When deciding whether to grant default judgment, the Court considers the following "*Eitel*" factors:

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of the plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

## III. Analysis

Midland National, Niewenhous, and Cullum jointly moved for default judgment

against Laura Ann Fairbanks. Because the Clerk of the Court already entered default, the Court can properly consider the *Eitel* factors in deciding whether to grant default judgment.

The Court finds that the first *Eitel* factor weighs in favor of granting the Joint Motion for Default. Midland National served the Personal Representative on November 5, 2019. (Doc. 36) She has not answered the Complaint or otherwise appeared in this action. In view of her default, Midland National has no alternative means by which to resolve its potential claim regarding the life insurance. *See Minnesota Life Ins. Co. v. Gomez, 2015 WL 4638351, at \*3* (citing *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d at 1172, 1177 (C.D. Cal. 2002)). Therefore, Midland National will be prejudiced if a default judgment is not entered.

Considering the relationship between the second and third *Eitel* factors, the Court considers the merits of Midland National's substantive claims and the sufficiency of the Complaint together. The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175. An interpleader action serves two purposes: (1) protecting the stakeholder from problems caused by multiple claimants to a single fund; and (2) limiting litigation expenses. *See Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010). Here, Midland National faces the risk of exposure to multiple liability if all three Defendants assert a right to the Policy Proceeds and Midland National had already paid such proceeds. Furthermore, Midland National alleges that it is a disinterested stakeholder with no claim to the Proceeds. Because multiple parties could be entitled to the insurance proceeds that are due as a result of the Insured's death, Midland National asserts that it cannot distribute the proceeds without exposing itself to liability or litigation. Exposure to multiple claims for the proceeds of an insurance policy is a type of action for which interpleader is clearly appropriate. The Court finds that Midland National has properly stated a claim for interpleader, and Midland National's actions properly protect the claims of the remaining Defendants. Furthermore, there are no policy considerations that preclude the entry of default judgment against the Personal Representative under the circumstances in this case.

*See Eitel*, 782 F.2d at 1471–72. Accordingly, the Court finds that the second and third *Eitel* factors weigh in favor of default judgment.

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Here, the Court finds that this factor is neutral. In an interpleader action, the amount of money at issue is not dispositive because the interpleading party does not claim any interest in the funds but instead asks the Court to determine who is entitled to the funds—this is true regardless of how substantial the amount of money at issue is. Midland National does not assert a claim to the funds but is attempting to distribute the funds to the party, or parties, entitled to the Policy Proceeds. Thus, this factor is neutral.

Here, there is little possibility of a dispute concerning the material facts as to the Personal Representative. She has not made any effort to challenge the Amended Complaint or otherwise appear in this case, even though the Court entered default against her several months ago. Thus, the Court finds that the fifth *Eitel* factor weighs in favor of the entry of default judgment.

The sixth *Eitel* factor considers whether the default was due to excusable neglect. There is no evidence that the Personal Representative's failure to appear or otherwise defend was the result of excusable neglect. Thus, the Court finds that the sixth *Eitel* factor weighs in favor of default judgment.

Under the seventh *Eitel* factor, the Court considers the policy that, whenever possible, cases should be tried on the merits. *Eitel*, 782 F.2d at 1472. The existence of Rule 55(b), however, indicates that the preference for resolving cases on the merits is not absolute. *PepsiCo, Inc.*, 238 F. Supp. 2d. at 1177. Because the Personal Representative has neither appeared nor responded in this action, deciding this case on the merits is "impractical," if not impossible. *Id.* Thus, the Court finds that the seventh and final *Eitel* factor weighs in favor of default judgment.

Accordingly, because the Court has subject matter jurisdiction over this action and personal jurisdiction over the Personal Representative, and the application of the *Eitel*

factors weighs in favor of the entry of default judgment, the Court will exercise its discretion to grant the Joint Motion for Default Judgment Against Laura Ann Fairbanks as Personal Representative of the Estate of Jason Charles Fairbanks, Deceased.

Accordingly,

**IT IS ORDERED** that the Joint Motion for Default Judgment Against Laura Ann Fairbanks as Personal Representative of the Estate of Jason Charles Fairbanks, Deceased (Doc. 52) is **granted in full**.

**IT IS FURTHER ORDERED** that that the Clerk of Court shall enter judgment permanently enjoining Laura Ann Fairbanks, as Personal Representative of the Estate of Jason Charles Fairbanks, Deceased, her attorneys, and her agents from initiating any proceedings against Midland National Life Insurance Company, Gus Niewenhous, or Kelly Cullum in connection with the life insurance benefits at issue in this interpleader action.

Dated this 4th day of August, 2020.

Honorable Steven P. Logan
United States District Judge